[Cite as *State v. Peacock*, 2014-Ohio-1571.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO.  13-13-42

    v.

RENELL R. PEACOCK,                   **O P I N I O N**

    DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 12-CR-0080

**Judgment Affirmed**

**Date of Decision:  April 14, 2014**

APPEARANCES:

    *James W. Fruth*  for Appellant

    *Angela M. Boes*  for Appellee

**SHAW, J.**

{¶1} Defendant-appellant Renell R. Peacock ("Peacock") appeals the September 10, 2013 judgment entry of the Seneca County Common Pleas Court sentencing Peacock to serve eleven months in prison after Peacock pled guilty to Trafficking in Cocaine in violation of R.C. 2925.03(A)(1)/(C)(4)(b), a felony of the fifth degree, Trafficking in Cocaine with the specifications that the offense occurred within the vicinity of a juvenile and the amount of cocaine involved equaled or exceeded five grams in violation of R.C. 2925.03(A)(1)/(C)(4)(b), a felony of the third degree, and Possessing Criminal Tools in violation of R.C. 2923.24(A)/(C), a felony of the fifth degree. On appeal, Peacock challenges the trial court's denial of Peacock's presentence motion to withdraw his guilty plea. For the reasons that follow, we affirm the judgment of the trial court.

{¶2} On April 19, 2012, Peacock was indicted for (Count 1) Trafficking in Cocaine with the specification that the offense occurred within the vicinity of a juvenile in violation of R.C. 2925.03(A)(1)/(C)(4)(b), a felony of the fourth degree, (Count 2) Trafficking in Cocaine with the specification that the offense occurred within the vicinity of a juvenile, and the specification that the amount of cocaine involved equaled or exceeded five grams in violation of R.C. 2925.03(A)(1)/(C)(4)(b), a felony of the third degree, and (Count 3) Possessing

Criminal Tools in violation of R.C. 2923.24(A)/(C), a felony of the fifth degree. (Doc. 1).

{¶3} On April 25, 2012, Peacock was arraigned and pled not guilty to the charges.

{¶4} On July 19, 2012, the case came on for a scheduled plea negotiation hearing and no issues were resolved so the case was set for trial. (Doc. 20).

{¶5} Trial was scheduled to commence on September 6, 2012; however, Peacock's attorney filed a motion for continuance on August 6, 2012. (Doc. 21). That motion was granted, and the trial was continued until November 8, 2012. (Doc. 22).

{¶6} On October 31, 2012, Peacock entered a written waiver of his right to a jury trial, electing to proceed with a bench trial. (Doc. 30).

{¶7} On November 8, 2012, the case came on for trial but had to be continued by the court due to a scheduling conflict. (Doc. 38). Trial was rescheduled for December 17, 2012. (Doc. 38).

{¶8} On December 4, 2012, Peacock's counsel filed a motion to withdraw as counsel, citing Peacock's dissatisfaction with his representation in support. (Doc. 46).

{¶9} On December 11, 2012, a hearing was held on Peacock's counsel's motion to withdraw, and the motion was ultimately granted. Due to Peacock

requiring new counsel and that counsel needing time to prepare, the December 17, 2012 trial date was continued.

{¶10} On April 11, 2013, the case came on for trial. Prior to the commencement of the trial, Peacock expressed to the court that he wanted another new attorney. The trial court denied Peacock's request as the court had already granted Peacock new counsel once, the State had all of its witnesses present and the trial had been continued multiple times before. The court then took a recess with the trial to begin immediately following the recess.

{¶11} During that recess, the State and Peacock negotiated a plea agreement. When court resumed, Peacock withdrew his previously tendered pleas of not guilty and pled guilty to the amended charge of (Count 1) Trafficking in Cocaine *without* a specification in violation of R.C. 2925.03(A)(1)/(C)(4)(b), a felony of the fifth degree, the charge as indicted in Count 2, Trafficking in Cocaine with two specifications in violation of R.C. 2925.03(A)(1)/(C)(4)(b), a felony of the third degree, and the charge as indicted in Count 3, Possessing Criminal Tools in violation of R.C. 2923.24(A)/(C), a felony of the fifth degree.

{¶12} In exchange for Peacock's guilty plea, the state agreed to jointly recommend that Peacock serve nine months in prison on each conviction, to be served concurrently with each other. The plea negotiations were all oral and put on the record. There was no written plea agreement.

{¶13} After hearing the plea negotiations, the court conducted a Criminal Rule 11 plea colloquy with Peacock. At that time Peacock stated affirmatively, *inter alia*, that he was entering the pleas voluntarily, and that he was satisfied with his counsel. When the dialogue was completed and the court was satisfied that Peacock entered his guilty pleas knowingly, intelligently and voluntarily, the court accepted Peacock's guilty pleas and entered findings of guilt. A presentence investigation was ordered and sentencing was set for April 30, 2013.

{¶14} On April 30, 2013, the case came before the trial court for a sentencing hearing at 2:00 p.m.; however, Peacock failed to appear. Peacock's attorney stated that he had spoken with Peacock on the morning of the hearing at approximately 10 a.m., informing Peacock of his need to attend. (Apr. 30, 2013, Tr. at 2). According to Peacock's attorney, Peacock claimed he had not been previously notified of the date of the sentencing hearing. (*Id*.) Peacock's counsel corroborated Peacock's claim about potentially not being notified prior to counsel calling Peacock on the morning of the sentencing hearing, as Peacock's counsel stated that the letter that he sent Peacock informing Peacock of the date of the hearing was returned as having not been delivered. (*Id*. at 2-3).

{¶15} Peacock's attorney stated that Peacock called him back at approximately 10:30 a.m. on the date of the sentencing hearing and acknowledged that he needed to be present, but stated he was having difficulty finding

transportation. (*Id.*) Peacock's attorney stated to the court that he told Peacock a bench warrant would be issued if he did not appear for sentencing. (*Id.* at 3). Peacock's attorney stated that he had no further communication with Peacock. (*Id.*)

{¶16} The court noted on the record that Peacock had failed to appear on multiple occasions to complete his presentence investigation in this case. (*Id.* at 3). After Peacock ultimately failed to appear, a bench warrant was issued for Peacock's arrest. (*Id.*)

{¶17} On June 25, 2013, Peacock resurfaced after being arrested on the bench warrant. At his bond hearing, Peacock told the court that he was not notified of his sentencing hearing until the day of the hearing, and that he wanted another attorney as Peacock claimed he was forced to negotiate his own plea deal. Peacock was subsequently assigned a new attorney. Peacock's sentencing hearing was scheduled for July 16, 2013. (Doc. 70).

{¶18} On July 11, 2013, Peacock filed a motion to withdraw his guilty plea. Peacock contended that he entered his plea under duress after his previous counsel told him he was an "idiot" for not taking a deal offered by the State on the day of trial. (Doc. 71). On July 15, 2013, the State filed a response. (Doc. 73).

{¶19} On July 16, 2013, the court converted Peacock's previously scheduled sentencing hearing to a hearing on Peacock's motion to withdraw his

guilty plea. At the hearing, Peacock took the stand and testified that he went into court on April 11, 2013, expecting to go to trial. Peacock testified that prior to the day of trial his attorney told him that he could "get [his charges] acquitted on trial." (Tr. at 6). According to Peacock, on the day of trial, his attorney told him to "take a two year deal." (*Id.*) Peacock testified that when he informed his attorney that he did not feel comfortable taking the deal, his attorney called him an "idiot for not taking it." (*Id.*) Peacock testified that at that point, he did not trust his attorney to represent him. (*Id.*) Peacock testified he was "forced to make a plea bargain by [him]self basically." (*Id.*)

{¶20} Peacock further testified that he then felt like he negotiated the plea on his own, without counsel. (Tr. at 8-9). In addition, Peacock testified that he told his counsel he would "do six months under duress. And [his counsel] came back and said nine months, that is completely under duress." (Tr. at 10). Peacock testified that he "thought [he] had no other choice or had no other option." (*Id.*)

{¶21} Following the State's cross-examination of Peacock at the hearing, the State called Detective Charles Boyer, who gave testimony regarding the investigation that led to the charges against Peacock. This included the introduction of video recordings of Peacock's drug sales to a confidential informant on two separate occasions. When the State finished its examination of Detective Boyer, Peacock's counsel asked for a continuance to allow more time to

prepare a cross-examination of the detective. The hearing was continued until August 20, 2013, where Peacock elected to represent himself, with his previous counsel as stand-by counsel. Peacock then began cross-examining Detective Boyer. Due to scheduling conflicts, the hearing did not conclude and was continued into the next day, August 21, 2013, where Peacock's cross-examination of Detective Boyer was completed. After closing arguments by both parties, the hearing concluded.

{¶22} On August 26, 2013, the court filed an entry denying Peacock's motion to withdraw his guilty plea. (Doc. 80). The trial court's seven-page judgment entry analyzed the appropriate factors to consider when deciding a presentence motion to withdraw a guilty plea as explained by this Court in *State v. Lane*, 3d Dist. Allen No. 1-10-10, 2010-Ohio-4819, ¶ 21. (*Id.*) In analyzing the factors, the trial court was persuaded by the fact that there would be some prejudice to the State as the lead investigator no longer worked in the area, and the confidential informant was no longer being used. (*Id.*) The court also found persuasive that it had held a full Criminal Rule 11 hearing with Peacock wherein Peacock stated he was acting voluntarily and was satisfied with his attorney at that time. (*Id.*) In addition, the court was persuaded by the "overwhelming" evidence of Peacock's guilt presented at the hearing on Peacock's motion to withdraw his pleas. (*Id.*)

{¶23} On September 10, 2013, a sentencing hearing was held. At the hearing, Peacock disputed the nature of the offenses of which he had pled guilty to, so the court replayed the audio recording from the Criminal Rule 11 dialogue the court held with Peacock previously. The State then recommended, contrary to its earlier sentencing agreement, that the court impose an 11 month prison sentence on Counts 1 and 3, and 24 months on Count 2, with all prison terms to be served concurrently for an aggregate prison term of 24 months. The court did not follow the State's recommendation, however, and sentenced Peacock to 11 months in prison as to Counts 1 and 3, and nine months in prison as to count 2, with all terms to be served concurrently for an aggregate prison term of 11 months. In deviating from the previously agreed sentencing recommendation, the court cited Peacock's failure to appear at sentencing and failure to contact the court in the months that followed.

{¶24} A judgment entry memorializing Peacock's sentence was filed that same date, September 10, 2013. (Doc. 82). It is from this judgment that Peacock appeals, asserting the following assignment of error for our review.

**ASSIGNMENT OF ERROR**
**THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION TO WITHDRAW HIS GUILTY PLEA.**

{¶25} In his assignment of error, Peacock contends that the trial court abused its discretion in denying his motion to withdraw his guilty plea.

Specifically, Peacock argues that when analyzing the nine factors a court is to consider in determining whether to grant a motion to withdraw a guilty plea under *State v. Lane*, *supra*, the factors weighed in favor of granting Peacock's motion to withdraw.

{¶26} Crim.R. 32.1 provides in pertinent part that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." While the general rule is that motions to withdraw guilty pleas, made before sentencing, are to be freely granted, the right to withdraw a guilty plea is not absolute. *State v. Xie*, 62 Ohio St.3d 521 (1992), paragraph one of the syllabus. The trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea. *Id*. The decision to grant or deny a motion to withdraw a guilty plea is within the sound discretion of the trial and will not be disturbed on appeal, absent an abuse of discretion. *Id*. at paragraph two of the syllabus. A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, ¶¶ 16-18 (2d Dist.).

**{¶27}** There are several factors that have been delineated by this and other courts to assist in our review of the trial court's determination to grant or deny a motion to withdraw a guilty plea, including: (1) whether the State will be prejudiced by withdrawal; (2) the representation afforded to the defendant by counsel; (3) the extent of the Crim.R. 11 hearing; (4) the extent of the hearing on the motion to withdraw; (5) whether the trial court gave full and fair consideration of the motion; (6) whether the timing of the motion was reasonable; (7) the reasons for the motion; (8) whether the defendant understood the nature of the charges and potential sentences; and (9) whether the accused was perhaps not guilty or had a complete defense to the charge. *State v. Lane*, 3d Dist. No. 1-10-10, 2010-Ohio-4819, ¶ 21, citing *State v. Griffin*, 7th Dist. Mahoning No. 00CA17, 2001-Ohio-3203; *State v. Prince*, 3d Dist. Auglaize No. 2-12-07, 2012-Ohio-4111, ¶ 22.

**{¶28}** In this case, Peacock entered his guilty pleas on April 11, 2013, the day his case was scheduled for a bench trial. On that date, Peacock and his attorney negotiated a plea wherein Peacock would plead guilty to an amended version of the first count of the indictment and the remaining counts as indicted, in exchange for a joint sentencing recommendation wherein Peacock would be sentenced to a total of nine months in prison. The State explained those

negotiations to the court and the court then engaged in a Criminal Rule 11

colloquy with Peacock, which contained the following dialogue.

> **THE COURT: I assume you can read and write the English language?**
>
> **PEACOCK: Yes, sir.**
>
> **THE COURT: More importantly, do you have any problems understanding what you read or hear?**
>
> **PEACOCK: No, sir.**
>
> **THE COURT: Are you now under the influence of any medication, drugs or alcohol?**
>
> **PEACOCK: No, sir.**
>
> **THE COURT: Do you believe you can think clearly?**
>
> **PEACOCK: Yes, sir.**
>
> **THE COURT: Now, think about the answer to this question. Are you satisfied with Mr. Stevens [Peacock's attorney] representation?**
>
> **PEACOCK: Yes, sir.**
>
> **\* \* \***
>
> **[The court recites the various counts to which Peacock is pleading guilty to, and the maximum penalties. The court also recites the proposed joint sentencing recommendation.]**
>
> **THE COURT: Is that your understanding of the proposed plea and the sentence recommendation in this case, Mr. Peacock?**
>
> **PEACOCK: Yes, sir.**

**THE COURT: Do you understand that prison terms for multiple charges, even if consecutive sentences are not mandatory, may be imposed consecutively by the Court? ＊＊＊**

**PEACOCK: Yes, sir.**

**＊＊＊**

**[The court discusses potential fines, post release control, and community control].**

**THE COURT: Do you understand the nature of each of these charges and the possible defenses you may have?**

**PEACOCK: Yes.**

**THE COURT: Are you entering this plea, these pleas voluntarily and of your own free will?**

**PEACOCK: Yes.**

**THE COURT: Has anybody threatened you?**

**PEACOCK: No, sir.**

**THE COURT: Any promises other than the sentence recommendation which we have already discussed?**

**PEACOCK: No, sir.**

**THE COURT: Do you understand that by pleading guilty you're giving up your right to a jury trial or a court trial which of course was scheduled for today?**

**PEACOCK: Yes, sir.**

**THE COURT: At that trial, you have [the] right to be present, to be represented by counsel. And, if you could not afford counsel one would be appointed at state expense. Do you understand that?**

**PEACOCK:** Yes.

**THE COURT:** Do you understand that you're giving up your right to confront and have your attorney question witnesses against you?

**PEACOCK:** Yes.

**THE COURT:** Do you understand that you do not have to call witnesses; however, if you need to call witnesses you are entitled to summon and have witnesses present to testify on your behalf? Do you understand this?

**PEACOCK:** Yes.

**THE COURT:** Do you understand that at that trial you would not have to take the witness stand, could not be forced to testify against yourself and that no one could comment if you chose not to testify?

**PEACOCK:** Yes.

**THE COURT:** Do you understand that you're waiving your right to have the State of Ohio prove your guilt beyond a reasonable doubt on every element of each of the charges?

**PEACOCK:** Yes.

**THE COURT:** Do you understand that by pleading guilty you admit committing these offenses?

**PEACOCK:** Yes.

**THE COURT:** Do you understand your right to appeal a maximum sentence or sentences, your other limited appellate rights and that any appeal must be filed within 30 days of my sentence?

**PEACOCK:** Yes.

> **THE COURT:** And, again, are you entering these pleas voluntarily?
>
> **PEACOCK:** Yes.
>
> **THE COURT:** You've had enough time to think about it, speak with Mr. Stevens, family, friends, whomever?
>
> **PEACOCK:** Yes.
>
> **THE COURT:** And you're sure this is the way that you want to go?
>
> **PEACOCK:** Yes.

(Apr. 11, 2013 Tr. at 14-24). Following this dialogue, the court accepted Peacock's pleas and entered findings of guilt on all three counts.

{¶29} Looking at the factors we have outlined in *Lane* (and other similar cases) in the past on the issue of whether a presentence motion to withdraw a guilty plea should be granted, several factors weigh heavily against granting Peacock's motion. First and foremost, it is clear from the record that there was a thorough Criminal Rule 11 hearing conducted on the date Peacock was originally scheduled to have a trial. The trial court asked if Peacock was satisfied with his representation, and asked multiple times if he was certain that he wanted to plead guilty pursuant to the plea negotiations. Peacock also stated he understood the charges to which he was pleading guilty and the accompanying maximum

-15-

penalties. At no time during the Crim.R. 11 dialogue did Peacock express reservations to the court about his decision or about his attorney.

{¶30} Second, the court held an extensive hearing on Peacock's motion to withdraw. The court held a hearing on three separate dates wherein Peacock gave testimony and the State presented the testimony of Detective Charles Boyer who was involved in the investigation of Peacock. In addition, the State entered multiple exhibits into evidence including video recordings of the drug transactions between Peacock and the confidential informant.

{¶31} Moreover, because of the extent of the hearing held on Peacock's motion to withdraw, Detective Boyer's testimony and the exhibits presented provided the court with overwhelming evidence of Peacock's guilt. Peacock's claim of innocence (relevant for the ninth factor of *Lane*) seems to rely on attacking one of the specifications to the Trafficking charges, namely that one of the offenses did not occur in the vicinity of a juvenile. However, the State removed that specification from the first count, and Detective Boyer specifically testified on direct examination that there were children within a hundred feet of the second recorded transaction, which correlated to the second count in the indictment. (Jul. 16, 2013 Tr. at 29-30). Peacock's only remaining claim at the hearing toward his innocence seemed to be that he was not in the habit of selling cocaine and just did it this time as a favor. However, the statute only requires a

single instance. Thus Peacock was patently unable to establish that he had a complete defense to the charges, and the record contained overwhelming evidence of his guilt, including Peacock's tacit admission that he sold the cocaine to the confidential informant.

{¶32} The State was also able to demonstrate *some* prejudice to its case if the plea was allowed to be withdrawn. Detective Boyer testified at the hearing on the motion to withdraw that the lead detective in Peacock's case no longer worked in the area and that the confidential informant was that Detective's informant.[1]

{¶33} Another factor weighing against Peacock's motion is the "timing" factor. Peacock contends his motion was timely because it was filed over a month prior to when the sentencing hearing was ultimately held. However, in reality, the motion was filed over two and a half months *after* the original sentencing date for which Peacock failed to appear.[2] In addition, the motion was only five days before Peacock's second sentencing hearing was scheduled to take place and that sentencing hearing was converted into the beginning of Peacock's hearing on his motion to withdraw his guilty pleas.

---

[1] The State also contended that it was prejudiced because the confidential informant no longer worked with law enforcement, having fulfilled his obligation, and that his name had been revealed. However, there was no testimony to support the State's claims on this issue.

[2] We understand that Peacock may not have been notified of his sentencing hearing until the morning of that actual hearing. However, Peacock acknowledged that morning his need to be present at the hearing and did not contact the court. He stayed out of contact with the court until he was ultimately arrested on the bench warrant that had been issued almost two months later.

{¶34} On appeal, Peacock contends that the entire plea proceedings were affected by Peacock's counsel calling him an "idiot" prior to trial. Peacock argues that his representation was thus deficient and that he only pled guilty because he was under "duress" and felt like he had no other options. Despite all these claims that were made after the fact, the court gave Peacock multiple chances to speak up at his plea hearing and Peacock declined to do so. Peacock had admittedly entered guilty pleas in the past and thus was familiar with the process. The only evidence supporting Peacock's claims are his self-serving statements, which directly contradict the statements he made at the time he entered his plea. Peacock also argues that he did not understand the nature of the charges and the potential sentences, which is again contrary to his expressed language at the plea hearing.

{¶35} After having a full hearing on Peacock's motion, the trial court filed a thorough judgment entry denying Peacock's motion, illustrating that the court had given full and fair consideration to Peacock's motion. Peacock's contention that the trial court did not give "full and fair" consideration is based on the fact that Peacock disagrees with the trial court's decision.

{¶36} Upon reviewing the record, there were clearly several factors that weighed strongly against granting Peacock's motion, and several others that weighed against his motion as well. Under the facts and circumstances of this case, we cannot find that the trial court abused its discretion in denying Peacock's

motion to withdraw his guilty plea. Accordingly, Peacock's assignment of error is overruled.

{¶37} For the foregoing reasons Peacock's assignment of error is overruled and the judgment of the Seneca County Common Pleas Court is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and PRESTON, J., concur.**

**/jlr**